J-S55028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MADENA SIMS | : | |
| | : | No. 377 WDA 2020 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered February 10, 2020
In the Court of Common Pleas of Allegheny County at
No(s): CP-02-CR-09334-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MADENA SIMS | : | |
| | : | |
| Appellant | : | No. 378 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 10, 2020
In the Court of Common Pleas of Allegheny County at
No(s): CP-02-CR-09333-2019

BEFORE: BOWES, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY McCAFFERY, J.: **FILED MARCH 19, 2021**

Madena Sims (Appellant) appeals from the judgments of sentence entered in the Allegheny County Court of Common Pleas, at two related dockets (as detailed *infra*), following a waiver trial and convictions for

---

* Retired Senior Judge assigned to the Superior Court.

disorderly conduct.[1]   Appellant's court-appointed counsel, James Baker, Esquire (Plea Counsel)[2], has filed a petition to withdraw from representation and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[3]   We grant Plea Counsel's petition to withdraw, and affirm Appellant's judgments of sentence.

## I.  Facts & Procedural History

Appellant and Stella Henderson (Complainant) are neighbors in a multistory apartment building.[4]   N.T. Trial, 2/10/20, at 23.   Appellant resides on the third floor of the building, while Complainant occupies a unit on the first.   **Id.**   Tensions between the former friends grew following two separate events: the first, a physical altercation in which Appellant's finger was broken; and the second, a dispute involving the parties' trash cans.   **Id.** at 15, 25, 35, 77.   At the time of the events herein, Appellant was subject to a no-contact order, imposed as a result of the parties' trash dispute.   **Id.** at 15-16, 26.   On July 15, 2019, at approximately 10 o'clock in the morning (Workplace Incident), Complainant was leaving for work when she encountered Appellant,

_____

[1] 18 Pa.C.S. §§ 5503(a)(1), 5503(a)(4).

[2] Plea Counsel serves as an Assistant Public Defender at the Office of the Public Defender, Allegheny County.

[3] Collectively referred to as "**Anders** Brief."

[4] Appellant was known to the Complainant as "Angel."   N.T. Trial, 2/10/20, at 66 ("Well, I don't know her as Stella, I know her as Angel.").

who "was out her [third story] window waiting for [Complainant] to come outside[.]" N.T. Trial, at 24. Appellant yelled at Complainant to "get [her] garbage." *Id.* She then began calling Complainant "B-I-T-C-H's and saying [Complainant was] a home wrecker[.]" *Id.* Complainant testified, Appellant then "pulled her breast out and licked [it] at me. And then [Appellant] got on the phone with her daughters and told her daughters, 'Come get this B-I-T-C-H, I'm tired of her.'" *Id.* at 25-26, 27-28. Complainant claims she did not respond, continued towards her vehicle, and left for work. *Id.* 26, 28.

Approximately 20 minutes later, one of Appellant's daughters arrived at Complainant's workplace and began a conversation with Complainant on the sidewalk. N.T. Trial, at 28. Appellant arrived moments later with a second daughter "to jump" Complainant. *Id.* at 28-29. "[T]hings started getting a little hostile[,]" so Complainant withdrew to the inside of her workplace. *Id.* at 29, 42. Complainant's boss, as well as a friend who had been walking by at the time, blocked Appellant and her daughters from entering the store. *Id.* at 29, 43. Tensions flared between the parties after Appellant "spit on [Complainant's] boss, three times[,]" and Complainant "shook up a two liter bottle [of soda]" and threw it at Appellant. *Id.* at 43. Afterwards, Appellant and her daughters left, and Complainant called the police. *Id.* at 43, 44.

Later that night, in the early morning hours of July 16, 2019, Complainant heard Appellant and a friend return to Appellant's third floor apartment (2AM Incident). N.T. Trial, at 30. Complainant testified she went

outside to speak with friends, who had "heard about [Appellant and her friend] coming to fight [Complainant], so they came to [Complainant's] house to see if [she] was okay[.]" *Id.* At which time, Appellant began yelling from her third floor window. *Id.* The argument caused a disturbance loud enough to prompt a neighbor to phone the police. *Id.* Sargent John Snyder of the Wilkinsburg Police Department responded to the scene at roughly 2 o'clock in the morning. *Id.* at 11. While questioning two pedestrians, Sgt. Snyder heard "yelling and screaming coming from around the corner." *Id.* Upon arrival to the apartment building, Sgt. Snyder testified "[Complainant] was talking back, but the majority of the yelling, the profanity, the vulgarity was coming from the third-floor window[.]" *Id.* Sgt. Snyder also testified that while he spoke with Complainant outside, Appellant continued "yelling out the windows profanity, nasty stuff. No threats or hates, just nasty stuff . . . calling [Complainant] a bitch, nasty ho, whore[,] that kind of stuff." *Id.* at 13, 31. Appellant would not answer the door when Sgt. Snyder attempted to speak with her. *Id.* at 13-14.

Later that afternoon, again, the parties became disputatious (Phone Incident). N.T. Trial, at 32. Complainant was sitting on her porch when Appellant arrived home and allegedly confronted her. *Id.* at 32. Complainant called the police again. *Id.* Complainant testified the police spoke to both her and Appellant. *Id.* at 32-33. Not ten minutes after police left, Complainant alleges to have received a telephone call from Appellant using an

unlisted number. *Id.* at 33-34. The caller told Complainant, "You know you're getting your ass whooped, right?" *Id.* at 34. Complainant claims to have received numerous calls from an unlisted number in the past, all of which she attributes to Appellant. *Id.* at 34, 35-37.

Charges against Appellant were filed in the Court of Common Pleas of Allegheny County at two separate dockets. On October 4, 2019, Appellant was charged at trial docket CP-02-CR-0009333-2019 (Docket 9333) with indecent exposure, disorderly conduct, and harassment with respect to the Workplace and 2AM incidents.[5] On October 8, 2019, Appellant was separately charged with terroristic threats and harassment at docket CP-02-CR-09334-2019 (Docket 9334) with respect to the Phone Incident.[6] On February 10, 2020, the charges proceeded to a consolidated waiver trial. Prior to the commencement of trial, the Commonwealth withdrew Appellant's charge for indecent exposure. N.T. Trial, at 3. At the conclusion of trial, Appellant's remaining charges at Docket 9333 were amended to separate counts of summary disorderly conduct.[7] *Id.* at 91-92. Likewise, Appellant's harassment charge at Docket 9334 was also amended to one count of summary disorderly

_____

[5] 18 Pa.C.S. §§ 3127(a), 5503(a)(1), 2709(a)(1), respectively.

[6] 18 Pa.C.S. §§ 2706(a)(1), 2709(a)(1).

[7] 18 Pa.C.S. § 5503(a)(1).

conduct.[8]  *Id.*  Then, at Docket 9333, Appellant was found guilty of summary disorderly conduct under subsection 5503(a)(1) on two counts.  *Id.* at 93.  At Docket 9334, Appellant was found not guilty of terroristic threats and guilty of summary disorderly conduct pursuant to subsection 5503(a)(4).  *Id.* at 93. A sentencing hearing was held immediately following announcement of the verdicts.  N.T. Trial, at 93.  At Docket 9333, Appellant received an aggregate sentence of 180 days' non-reporting probation, one 90 day term for each of her two disorderly conduct convictions.  *See* Amended Sentencing Order, 3/17/20.  She was also ordered to pay summary court costs of $574.49.  *Id.* At Docket 9334, Appellant was also sentenced to 90 days' of non-reporting probation, to run concurrently with her sentence at Docket 9333.  *Id.*  As a condition of her probation, Appellant was ordered to have no contact with Complainant.  *Id.*

On March 9, 2020, Appellant submitted an untimely post-sentence motion along with a Petition to Accept Post-Sentence Motion *Nun Pro Tunc* (NPT Petition).  In the NPT Petition, Appellant's trial counsel stated he was notified by Appellant three days prior "that she desired to file a post-sentence motion."  Petition to Accept Post-Sentence Motion *Nun Pro Tunc*, 3/9/20, at 2. Counsel concluded "a weight of the evidence claim must be raised on [Appellant's] case[,] and to deny the NPT Petition would be to "den[y

_____

[8] 18 Pa.C.S. § 5503(a)(4).

- 6 -

Appellant] her absolute[,] constitutional right to a direct appeal[.]" *Id.* at 3, 4. The next day, on March 10, 2020, Appellant's NPT Petition was denied, as was her post-sentence motion. *See* Orders, 3/10/20.

On March 11, 2020, Appellant filed timely notices of appeal from each of her dockets.[9] Appellant was ordered to file a Pa.R.A.P. 1925(b) concise statement, which she timely filed on June 1, 2020.[10] In the concise statement, Plea Counsel averred he was unable to discover any non-frivolous appealable matters and stated his intention to file an *Anders* brief and motion to withdraw his representation. Appellant's Concise Statement of Errors

_____

[9] Appellant has thus complied with Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order of a government unit or trial court."), and *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018) ("[W]hen a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed.").

[10] Appellant's Pa.R.A.P. 1925(b) concise statement was originally due April 2, 2020. *See* Order 3/12/20. However, owing to the COVID-19 crisis, a judicial emergency was declared in the Fifth Judicial District of Pennsylvania and filing deadlines were suspended from March 16th through June 1, 2020. *See* Amended Fifth Judicial District Emergency Operations Plan, No. 23 WM 2020, 5/28/20, at 6. Appellant's deadline to file her concise statement was thus extended from April 2, 2020, to June 19, 2020, pursuant to the court's amended operations plan. *Id.* ("New deadlines shall be calculated by adding [78 days] to the original deadline."). Nevertheless, we acknowledge Appellant's diligence. On April 28, 2020, before the expiration of the court's original suspension of filing deadlines, Appellant submitted a request for an extension of time to file her Pa.R.A.P. 1925(b) concise statement. *See* Petition for Extension of Time to File Concise Statement of Errors Complained of on Appeal, 4/28/20. Appellant's petition was granted by order of the trial court and her filing deadline was extended to June 1, 2020. *See* Order, 4/30/20.

Complained of on Appeal, 6/1/20, at 3. Appellant's concise statement also asserts a challenge to the weight and sufficiency of the evidence. **Id.** at 3-4. On June 29, 2020, the trial court filed a Pa.R.A.P. 1925(a) supplemental opinion. Appellant's cases were consolidated *sua sponte* by order of this Court. **See** Order, 3/18/20. On October 1, 2020, Plea Counsel filed a Petition for Leave to Withdraw and accompanying **Anders** brief. To his brief, Plea Counsel attached a letter sent to Appellant explaining her options to either "discontinue [the] appeal[,] . . . hire private counsel to prepare an alternative brief, or" prepare a *pro se* brief. **Anders** Brief, Appx. D, 10/1/20, at 4. On January 5, 2021, this Court received Appellant's *pro se* Letter to the Superior Court in Response to **Anders** Brief.

## II. Petition to Withdraw and *Anders* Brief

Preliminarily, we must address Plea Counsel's petition to withdraw and the accompanying **Anders** brief, both alleging the instant appeals are frivolous. Plea Counsel must first "petition to withdraw stating that he or she has made a conscientious examination of the record and determined that the appeal would be frivolous." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1195 (Pa. Super. 2018) (*en banc*) (citation omitted). **Anders** withdrawal may be granted if, in addition to the petition to withdraw, counsel also files a brief satisfying the requirements set forth in **Santiago**, *supra*. **Id.** at 1195-96. This Court must then address the petition to withdraw and accompanied

*Anders* brief before we may review the merits of the issues presented therein.

*Id.*

> Counsel's *Anders* brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 1196, *quoting*, **Santiago**, 978 A.2d at 316.  In addition, counsel must provide the client a copy of the **Anders** brief, along with a letter advising the client of the option to retain new counsel or proceed *pro se*.  **Yorgey**, 188 A.3d at 1195-96 (citation omitted).  Indeed:

> **Anders** specifically contemplates that, after counsel files the **Anders** brief, an appellant may file a *pro se* brief. . . . [P]art of counsel's duty under **Anders** is to advise the appellant of the right to raise points in addition to those in counsel's **Anders** brief. Thus, when conducting an **Anders** review, this Court will consider not only the brief filed by counsel but also any *pro se* appellate brief.

**Commonwealth. v. Nischan**, 928 A.2d 349, 353 (Pa. Super. 2007) (citations omitted).  "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court[ ] proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous."  **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (citation omitted).  If we agree with counsel's assessment,

- 9 -

"we may grant counsel's request to withdraw and dismiss the appeal[.]" *Yorgey*, 188 A.3d at 1196, *citing **Anders***, 386 U.S. at 744.

Our thorough review of Plea Counsel's submissions reveal he has satisfied the substantive requirements of ***Anders*** and ***Santiago***. First, Plea Counsel submitted a petition to withdraw, stating, "[u]ndersigned [c]ounsel has made a full and thorough examination of the record and case law to conclude that [Appellant's] issues are frivolous." ***See*** Petition for Leave to Withdraw: ***Anders*** Brief, 10/1/20, at 2-3. In addition, Plea Counsel also filed the required ***Anders*** brief, detailing: the relevant factual and procedural history of the case with citations to the record, ***Anders*** Brief at 7-14; his conclusion the appeal is frivolous, *id.* at 16, 24; and supporting reasons for why the appeal is frivolous, *id.* at 16-23, 24-28. Finally, attached to his brief is a letter addressed to Appellant advising her of the option to retain new counsel or proceed *pro se*. ***See Anders*** Brief, Appx. D, at 4; ***see also Yorgey***, 188 A.3d at 1195-96. We may therefore proceed to conduct an independent review of the record to determine whether the appeal is wholly frivolous.[11] ***See Goodwin***, 928 A.2d at 291. In his ***Anders*** brief, Plea Counsel raises the following issues:

_____

[11] While we conclude Plea Counsel's submissions comply with the substantive requirements of ***Anders*** and ***Santiago***, we clarify the technical requirements of the ***Anders*** brief. Counsel's brief must include either a reference to anything in the record arguably supporting the appeal, or an affirmative statement "there were no such references for him to make." ***Santiago***, 978 A.2d at 360 ("Without one or the other, we are not assured, as ***Anders***

[1] Is [Appellant's] claim that there was insufficient evidence to convict her of each count of summary disorderly conduct frivolous?

[2] Is [Appellant's] claim that the verdict on each summary disorderly conduct was against the weight of the evidence frivolous?

*Anders* Brief at 6.

### III.  Sufficiency of the Evidence

Plea Counsel concludes it would be frivolous to challenge Appellant's convictions for summary disorderly conduct on the basis of insufficient evidence.  *Anders* Brief at 16.  He asserts Appellant's conduct "'disturb[ed] the peace and dignity of the community.'"  *Id.* at 17, *citing*, *Commonwealth v. Greene*, 189 A.2d 141, 144 (Pa. 1963).  Plea Counsel also submits precedent requires affirmance in cases of "multiple, prolonged and vocal disagreements with a neighbor[,]" which occur in public areas.  *Id.* at 22.  In response, Appellant simply asserts, "[t]he evidence used is insufficient."

_____

requires, that counsel fully performed his duty as Santiago's advocate[.]").  Here, we are satisfied Plea Counsel has "fully performed his duty as [Appellant's] advocate to independently search the record as a trained advocate with an eye to uncovering appealable error[.]"  *See Santiago*, 978 A.2d at 360.  Plea Counsel's reference to his "full and thorough examination of the record[,]" is evidenced in his "candid assessment of the complete lack of merit in his client's case," thereby satisfying the substantive requirements of *Anders* and *Santiago*.  *See* Petition for Leave to Withdraw: *Anders* Brief, 10/1/20, at 2-3; *see also Santiago*, 978 A.2d at 359.  Our independent review of the record confirms Plea Counsel has fulfilled his professional obligations as Appellant's counsel.  *See Commonwealth v. Cox*, 231 A.3d 1011, 1016 (Pa. Super. 2020) (in context of *Anders* withdraw, this Court may overlook procedural deficiencies in appellate court filings to ensure *Anders* counsel has not overlooked non-frivolous issues).

Appellant's *pro se* Letter to the Superior Court in Response to **Anders** Brief,

1/5/21, at 4.

Our independent review of the trial court proceedings is guided by well-

established principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Goodwin**, 928 A.2d at 291 (citation omitted). For ease of review, we also set

forth the relevant statutory provisions:

> **(a) Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> > (1) engages in fighting or threatening, or in violent or tumultuous behavior; [or]
> >
> > \* \* \*
> >
> > (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

- 12 -

18 Pa.C.S. § 5503(a)(1), (4).

Here, the trial court explained:

[T]he Commonwealth presented evidence that [Appellant] threatened and shouted profanities towards [Complainant] from the third-floor window, [and] exposed her breast and licked it in an apparent threat towards [Complainant]. [Appellant] was so loud in her shouting at 2:00 a.m. such that a neighbor called the police. Furthermore, the Commonwealth presented evidence that [Appellant] called [Complainant] from a blocked phone number and threatened to "kick her ass."

Trial Ct. Op., 6/29/20, at 4-5.

Based on our independent, comprehensive review of the trial court proceedings in the light most favorable to the verdict winner, *see Goodwin*, 928 A.2d at 291, we decline to find the evidence was insufficient to support Appellant's convictions for disorderly conduct. Not only does Appellant concede she "did by provocation breach the peace of the community[,]" the testimony introduced at trial reveals she participated in, if not instigated, three separate events resulting in "vociferous shouting and yelling which provoke[ed] retaliation and public commotion[.]" *See* Appellant's *pro se* Letter to the Superior Court in Response to *Anders* Brief, 1/5/21, at 2; *see also Greene*, 189 A.2d at 144. Pertinently, Appellant was subject to a no-contact order, imposed as a result of the parties' contentious history. N.T. Trial, at 15-16, 26. With regard to the Workplace Incident, Appellant screamed profanities from her third-floor window before Complainant left for work, *id.* at 24-28, and then solicited the assistance of her daughters in

- 13 -

traveling to Complainant's workplace where Complainant's boss and friend had to restrain the parties from attacking each another. *Id.* at 28-29. Not only was Complainant's boss placed in the middle of the parties' dispute, he was spit on three times. *Id.* at 43. The parties' dispute continued into the early hours of the morning. *Id.* at 30. The early morning behavior caused such a disturbance a neighbor phoned the police and the responding officer heard screaming from around the corner. *Id.* at 11, 30. Appellant was brazen enough to continue screaming "profanity" and "nasty stuff" in the presence of the Wilkinsburg Police Department, at 2 o'clock in the morning. *Id.* at 13, 31. And yet, the dispute did not end. The very next day, another argument between the parties resulted in a threatening telephone call. *Id.* at 34.

In consideration of the foregoing, the evidence is not "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *See Goodwin*, 928 A.2d at 291. We also emphasize the trial court was free to believe all, part, or none of the testimony introduced at trial. *Id.* Thus, the evidence was sufficient to establish Appellant recklessly created the risk of public inconvenience, annoyance, or alarm by engaging in fighting, threatening, or violent behavior. *See* 18 Pa.C.S. § 5503(a)(1). The evidence also sufficiently establishes Appellant recklessly created a hazardous or physically offensive condition which served no legitimate purpose. *See* 18 Pa.C.S. § 5503(a)(4); *see also Greene*, 189 A.2d at 144. Thus, after an independent review of the record, we conclude

Appellant's challenge to the sufficiency of the evidence is wholly frivolous. *See Goodwin*, 928 A.2d at 291.

### IV. Weight of the Evidence

Plea Counsel also avers Appellant's challenge to the weight of the evidence is equally frivolous. *Anders* Brief at 24. He maintains a "mere conflict in testimony" is not adequate grounds to award a new trial, *id.* at 25, *quoting*, *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000), and Appellant cannot show that "the trial court abused its discretion by ignoring evidence of greater weight." *Id.* at 27-28, *citing*, *Commonwealth v. Champney*, 832 A.2d 403 (Pa. 2003). In response, Appellant argues, "the weight of the evidence and sentencing was not fair." Appellant's *pro se* Letter to the Superior Court in Response to *Anders* Brief, 1/5/21, at 2. She adamantly denies the allegations asserted by the Commonwealth, and maintains her shouting profanity and communicating a threat over the telephone were all done in self-defense.[12] *Id.* at 3-4.

---

[12] Appellant also advances two other arguments. The first is a challenge to the effectiveness of her trial counsel. Appellant's *pro se* Letter to the Superior Court in Response to *Anders* Brief, 1/5/21, at 2-4. As the instant case appears before this Court on direct appeal, Appellant's ineffectiveness claim is misplaced, and must be advanced pursuant to the Post Conviction Relief Act. *See* 42 Pa.C.S. §§ 9541-9546; *see also Commonwealth v. Grant*, 813 A.2d 726 (2002) (confirming that, absent certain unusual circumstances, ineffectiveness claims are to be raised via the PCRA and not on direct appeal). The second claim is that she "was charged with [h]arassment twice for the same incident[,] and found guilty, causing Double Jeopardy." Appellant's *pro se* Letter to the Superior Court in Response to *Anders* Brief, 1/5/21, at 2-4. We note our review is limited to those facts which are contained in the certified

- 15 -

Before we independently evaluate the legitimacy of Appellant's weight challenge, we may, *sua sponte*, assess whether the challenge properly invokes this Court's jurisdiction. **See Commonwealth v. Capaldi**, 112 A.3d 1242, 1244 (Pa. Super. 2015) (citation omitted).

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.

**Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) (citations omitted). A post-sentence motion containing a challenge to the weight of the evidence must be filed within 10 days after the imposition of sentence. **See** Pa.R.Crim.P. 607, 702(A)(1). Ordinarily, failure to file a post-sentence motion within the applicable time constraints results in waiver of the issues presented therein. **Commonwealth v. Wrecks**, 931 A.2d 717, 719 (Pa. Super. 2007).

However, a defendant may request *nunc pro tunc* consideration of an untimely post-sentence motion within thirty days of the judgment of sentence. **Capaldi**, 112 A.3d at 1244. A defendant seeking relief *nunc pro tunc* must **request** consideration of a post-sentence motion *nunc pro tunc* and the trial

---

record, and we may not stray *dehors* the record. **Commonwealth v. O'Black**, 897 A.2d 1234, 1240 (Pa. Super. 2006) (citations omitted). Here, the certified record is entirely lacking in support of Appellant's challenge. Her claim is therefore not properly before the Court. **Id.**

court must **expressly grant** the *nunc pro tunc* relief. ***Id.***, *citing* ***Commonwealth v. Dreves***, 839 A.2d 1122, 1128-29 (Pa. Super. 2003) (*en banc*). Moreover, "a trial court's resolution of the merits of [a] late post-sentence motion is no substitute for an order expressly granting *nunc pro tunc* relief." ***Id.*** (citation omitted).

Applying the preceding standards, we deem the present challenge waived. First, Appellant's sentence was imposed on February 10, 2020. She filed a post-sentence motion challenging the weight of evidence **28 days later**, on March 9th. Appellant also filed a separate and distinct NPT Petition. Thus, by filing a separate petition requesting relief *nunc pro tunc* and detailing the circumstances giving rise to the late filing of her post-sentence motion, Appellant has satisfied the first prerequisite to receiving *nunc pro tunc* relief. ***See Capaldi***, 112 A.3d at 1244.

Even so, Appellant has not secured from the trial court an express grant of *nunc pro tunc* relief and has therefore failed to fulfill the second prerequisite. ***See Capaldi***, 112 A.3d at 1244*.* On March 10, 2020, Appellant's NPT Petition was denied. ***See*** Order, 3/10/20. The trial court denied Appellant's NPT Petition by striking the word "granted" from the proposed order and instead wrote, "denied." ***See id.*** Similarly, the trial court struck the word "granted" from the proposed order attached to Appellant's untimely post-sentence motion and cited to the order denying Appellant's NPT Petition. ***Id.*** Critically, the certified record on appeal contains no order from the trial

court expressly granting Appellant *nunc pro tunc* relief.[13]  ***See Capaldi***, 112 A.3d at 1244.  We are therefore without jurisdiction to address Appellant's challenge to the weight of the evidence.[14]  ***Id.***  For the foregoing reasons, we conclude Appellant's weight claim is frivolous.

Additionally, our independent review of the record reveals no non-frivolous issues that may be brought on appeal.

Petition to Withdraw granted.  Judgments of Sentence Affirmed.

---

[13] Our complete review of the record reveals the trial court proceeded as though the NPT Petition had been granted.  ***See*** Trial Ct. Op., 6/29/20, at 3. However, *stare decisis* compels our conclusion that *nun pro tunc* relief was not expressly conferred.  Notwithstanding the trial court's resolution of Appellant's untimely post-sentence motion, as discussed above, the certified record on appeal contains no express grant of *nunc pro tunc* relief.  ***See Capaldi***, 112 A.3d at 1244.

[14] We acknowledge Plea Counsel's ***Anders*** Brief contained no mention of the trial court's treatment of the NPT Petition or the absence of an express order granting *nunc pro tunc* relief.  Nonetheless, we find this omission inconsequential to our disposition of the present appeal because Appellant's underlying weight claim would be frivolous.  Our thorough review of the record does not occasion a finding the trial court abused its discretion in the weight afforded the testimony adduced at trial, nor were its judgment manifestly unreasonable.  ***See Widmer***, 744 A.2d at 753.  For these reasons, if jurisdiction had been properly invoked, we would conclude Appellant's weight claim is frivolous.  ***See Yorgey***, 188 A.3d at 1196.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/19/2021